IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
------

DOUGLAS S. MCNAMARA,

              Plaintiff,

  v.                                             OPINION AND ORDER

KILOLO KIJAKAZI,                            21-cv-63-wmc
Acting Commissioner of Social Security,

              Defendant.
------

    Plaintiff Douglas McNamara seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that McNamara was not disabled within the meaning of the Social Security Act. Specifically, McNamara contends that the administrative law judge (ALJ) who decided his disability claim failed to adequately support his conclusion that McNamara could perform sedentary work despite his severe physical impairments. Because the ALJ's conclusion is adequately explained in his decision and supported by substantial evidence, the court will affirm the Commissioner's decision.

BACKGROUND

    McNamara applied for disability benefits and supplemental security income in June 2018, alleging a disability onset date of June 2017, when he was 63 years old. After McNamara's claim was denied by the local disability agency initially and on reconsideration, ALJ Michael Schaefer held an evidentiary hearing on January 30, 2020.

    At that hearing, McNamara testified that he used to operate a silo repair business, but that he had done only part-time supervisory and estimation work, and no physical labor, for

several years before he stopped working completely in 2018. (AR 53–55, 57.) Indeed, toward the end of 2018, he worked only four to ten hours a week from his home, where he could take breaks for naps and to sit in a warm bathtub. (AR 58.) Ultimately, he testified to no longer being able to work at all due to pain in his back, legs, hips, feet, hands and shoulders, as well as constant tingling in his feet. (AR 60, 64.) He also described his knee replacement surgery in 2015 that "failed" after about a year, and his taking Gabapentin, Tylenol 3 and Aleve for pain. (AR 60.) McNamara further testified that: he had used a cane to walk for the past three years (AR 63); he could not walk more than a block without stopping (AR 62); he used a motorized cart to grocery shop (AR 67); friends and family helped him take care of his home and lawn (AR 48–49, 50); and he weighed between 280 and 300 pounds (AR 62). McNamara stood up from his chair approximately 50 minutes into the hearing, stating that his hips, knees and back were hurting. (AR 78.) McNamara testified that a friend had modified the chairs in his home to make it easier for him to stand up. (AR 78–79.)

ALJ Schaefer issued an decision that was unfavorable to McNamara in April 2020. (AR 23–34.) To begin, the ALJ determined that McNamara had the following severe impairments: degenerative joint disease of the bilateral hips, post right hip replacement; degenerative joint disease of the bilateral knees, status post left knee replacement; degenerative joint disease of the bilateral shoulders; lumbar spine degenerative disc disease and thoracic spine dysfunction; and COPD. (AR 25–26.) Despite these impairments, the ALJ found that McNamara retained the residual functional capacity to perform sedentary work, which meant lifting no more than 10 pounds at a time, standing or walking two hours in an eight-hour workday, and sitting six hours in an eight-hour workday, with the following, additional restrictions:

- the option to alternate between sitting and standing as often as every 30 minutes for 5 to 10 minutes at a time;

- jobs that can be performed while using a cane;

- use of a cane while ambulating on uneven terrain and for prolonged ambulation (more than 25 feet);

- never climbing ladders, ropes, or scaffolds;

- occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling;

- no more than occasional exposure to extremes of cold, heat, wetness, humidity, vibration, pulmonary irritants, poorly ventilated areas, or workplace hazards; and

- no fast-paced production quotas or rates.

(AR 28.) Relying on the testimony of a vocational expert, the ALJ found that McNamara was not disabled because he was capable of performing his past work as an estimator and telephone solicitor. (AR 33.) McNamara appealed, but the Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner.

ANALYSIS

The issue on appeal to this court is whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). This standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The ALJ must also identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate factual determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

Plaintiff contends that the ALJ erred by: (1) failing to weigh the medical opinion evidence properly; (2) discounting plaintiff's subjective symptoms; (3) failing to support the

3

sit/stand option with substantial evidence; and (4) failing to account for plaintiff's obesity. The court addresses these arguments in turn below.

I.  **Medical Opinion Evidence**

Plaintiff first contends that the ALJ erred by failing to explain adequately his reasons for discounting the medical opinions in the record. In evaluating the persuasiveness of medical opinion evidence, the ALJ is to consider: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes the length of treatment, frequency of examinations, purpose of the treatment, extent of the treatment and the examining relationship; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c.

Plaintiff's record includes medical opinions from two state agency reviewing physicians and one consulting physician seen by plaintiff. In November 2018, the state agency's reviewing physician, William Fowler, M.D., found that plaintiff could perform light work: lifting 20 pounds occasionally and 10 pounds frequently, while standing, walking and sitting each for a total of six hours in an eight-hour workday. (AR 105–06.) In January 2019, a second state agency reviewing physician, Patrick Benson, D.O., also found that plaintiff could perform light work with some additional, postural and reaching restrictions. (AR 127–28.) The ALJ found these opinions well-supported, with narrative explanations and citations to plaintiff's medical records, but noted that the opinions failed to account for treatment plaintiff had received post-dating those reviews, including plaintiff's right hip replacement in June of 2019. (AR 32.) Based on more recent medical records, therefore, the ALJ determined that plaintiff should be restricted to sedentary work only, with additional postural and manipulative restrictions not suggested by either reviewing physician. (AR 28.) Plaintiff has identified no specific errors or

4

inadequacies in the ALJ's descriptions or consideration of Dr. Fowler's or Dr. Benson's opinions.

As for the January 2020 opinion of Dr. Larry Studt, M.D. (AR 1026), the ALJ found his "highly limiting" opinion to be unpersuasive in light of plaintiff's medical records. While plaintiff argues that the ALJ ignored medical records that supported Dr. Studt's opinions, the ALJ adequately explained that Dr. Studt was not a treating physician, and his opinion was based on a single meeting with plaintiff. (AR 32.) Indeed, as the ALJ pointed out, Dr. Studt does not explain the extent of the one examination he performed, if any, much less the specific results of any tests. His opinion makes no reference to reviewing plaintiff's medical records, including a complete absence of his review of any objective medical records or imaging in his opinion. (*Id.*) Nor did Studt provide any narrative rationale or explanation for his limiting opinions, which instead consisted of a series of checked boxes and unsupported conclusions. (AR 1026.) The ALJ further noted that the Dr. Studt's opinion was contradicted by other evidence, including the opinions of the state agency medical consultants, lower back diagnostic imaging showing only mild to moderate narrowing at two levels, treatment records showing that plaintiff ambulated well after his right hip surgery, and exam records from December 2019, just one month before Studt authored his opinion, showing that plaintiff had full strength, intact sensation and full lower back flexion during a December 2019 exam. (AR 31-32.) Thus, regardless of plaintiff's own, favorable "cherry picking" from the record, the ALJ's discussion Dr. Studt's opinion and the medical records as a whole was more than sufficient to satisfy the "substantial evidence" standard.

Plaintiff also argues that because the ALJ did not credit any specific medical opinion in support, the "middle ground RFC crafted by the ALJ creates an evidentiary gap." (Pl. Br. (dkt.

#19) 11.) However, the ALJ was presented with diverging medical opinions, and his formulation of plaintiff's RFC reflects a balancing of those opinions and other medical evidence before him. In particular, the state agency reviewing physicians found that plaintiff could perform a range of light work -- standing or walking six hours in an eight-hour workday -- while plaintiff's medical source opinioned that he could walk less than a block at a time, along with other work-preclusive restrictions. (AR 105–06, 126–29, 1026–28.) In the end, the ALJ has the "final responsibility" to determine "a claimant's residual functional capacity and need not adopt any one doctor's opinion." *Fanta v. Saul*, 828 F. App'x 655, 658 (7th Cir. 2021) (citation omitted). The ALJ's role is to weigh the evidence and resolve evidentiary conflicts to determine the claimant's RFC. 29 C.F.R. § 404.1546(c); *see also Kramer v. Saul*, No. 19-C-1558, 2021 WL 973936, at *6 (E.D. Wis. Mar. 16, 2021) ("In other words, the ALJ found that Plaintiff's limitations were greater than those endorsed by Dr. Rao but less than the limitations found by Dr. Taylor, and she formulated an RFC with limitations that were supported by the record. The ALJ's consideration of these opinions was not unreasonable.").

In sum, the ALJ's discussion of the medical opinions and crafting of plaintiff's RFC is supported by substantial evidence. Even if reasonable minds could differ on the weight given conflicting records, the court may not substitute the ALJ's judgment with its own. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). Therefore, the ALJ's consideration of the medical opinions does not provide a basis for remanding this case.

II. **Subjective Symptoms**

Next, plaintiff contends that the ALJ erred by not fully crediting his testimony about the limiting effects of his pain. Plaintiff particularly criticizes the ALJ's finding that his left

knee had "improved" after his 2015 replacement (AR 29), pointing out that he had complained of pain in that knee during 2019. (AR 847–48.) Even crediting the latter, some four years of improvement in between is enough to support the ALJ's observation. Plaintiff also points to evidence that he complained about swelling and discomfort in his leg, a long recovery from his hip procedure, and suffering due to his right knee. (AR 927, 933, 943, 953, 984–85.)

However, the court may disturb the ALJ's credibility determination only if it is "patently wrong," *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018), and the record contains sufficient support for the ALJ's conclusion that plaintiff's subjective reports were not entirely consistent with the other record evidence. Regardless, the ALJ acknowledged that plaintiff's complaints of ongoing and severe pain, and difficulty standing and walking, along with diagnostic imaging and medical records, supported a sedentary exertional level, with postural and environmental limitations. (AR 32.) The ALJ acknowledged that treatment records detailed some abnormal findings, such as an antalgic gait at times, a positive straight leg raise test on the left and difficult rising from sitting to standing. (AR 29 (citing AR 751), AR 30 (citing AR 487–88, 825, 848–49, 902, 983–84), AR 31 (citing AR 1012–13).) The ALJ further noted that evidence of plaintiff's ability to walk and use of a cane varied, but still credited plaintiff's testimony that he used a cane, and the RFC restricted plaintiff to jobs that could be performed while using a cane. (AR 28, 30.) Thus, while *some* evidence corroborated plaintiff's testimony, the ALJ was not obligated to accept it as conclusive. Here, the ALJ went on to explain adequately that the record as a whole showed that plaintiff had generally stable physical conditions, and his pain improved with various treatments and medications.

The ALJ also considered plaintiff's testimony in light of the objective medical evidence, including longitudinal treatment records documenting many normal findings as to full strength,

7

intact sensation, largely normal range of motion in the knees, full lower back flexion, no joint effusion, a negative straight leg raise tests on the right, and some success with pain injections, left knee and right hip replacements, and a normal gate at times. (AR 29–30 (citing AR 868, 902, 923, 954, 1011–15.))

Finally, the ALJ addressed plaintiff's treatment measures and their effectiveness. As discussed already, plaintiff faults the ALJ for finding that his left knee pain improved after his November 2015 left knee replacement surgery, but his treatment records did show improvement. (AR 29 (citing 751, 488, 983–84); AR 519 (noting good recovery from knee replacement).) Similarly, following plaintiff's June 2019 right hip surgery, plaintiff reported no pain in August 2019, "barely" using his cane, and being able to get up and walk around the room without problem. (AR 30 (citing AR 923 ("overall he feels he is doing well").) The ALJ also noted that plaintiff began physical therapy for his shoulder in February 2019, and canceled future appointments by April 2019, reporting that he did not feel it was needed any longer. (AR 31 (citing AR 766).)

In sum, the ALJ's review and consideration of plaintiff's subjective symptoms was consistent with legal requirements. *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). He provided specific reasons for discounting certain of plaintiff's reported, subjective symptoms, which is all that is required to satisfy the "substantial evidence" standard. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("The ALJ's determination was not patently wrong because of the many specific reasons the ALJ cited from the record.")

### III. Sit/Stand Option

Plaintiff's third argument is that the ALJ did not adequately explain his basis for including in the RFC assessment an option to alternate between sitting and standing every 30 minutes for 5 to 10 minutes. More specifically, plaintiff argues that because no medical expert formally opined that plaintiff would require that specific sit/stand option, the ALJ "played doctor" and came up with that restriction on his own. However, there is no legal requirement that an ALJ's RFC formulation allowing for plaintiff to alternate positions between sitting and standing as often as every 30 minutes be based on an expressed medical opinion. *See Olson v. Saul*, No. 20-cv-672-jdp, 2021 WL 1783136, at *2 (W.D. Wis. May 5, 2021). Instead, the ALJ here was free to consider and credit plaintiff's testimony "that he needed to change positions frequently," as well as the medical opinion evidence and the medical treatment records. (AR 32.) In addition, the ALJ had actually *observed* plaintiff's ability to sit for approximately 50 minutes during the evidentiary hearing, then expressing a need to stand. (AR 78.) Moreover, plaintiff himself reported in his function reports that he could sit up to two to three hours at a time in 2018 (AR 322), and 45 to 60 minutes at a time in 2019 (AR 392). Plaintiff has not shown that the ALJ's inclusion of the sit/stand option in the RFC is sufficient reason to remand this case.

### IV. Obesity

Finally, plaintiff argues that the ALJ's obesity analysis was perfunctory. (AR 25–26.) In particular, he contends that the ALJ failed to consider (1) how obesity could exacerbate plaintiff's other impairments, and exacerbate his pain in particular, and (2) whether his obesity required additional limitations in sitting, standing, walking, lifting, kneeling and crouching.

9

*See* SSR 19-2p.  However, the ALJ specifically acknowledged that plaintiff was morbidly obese, with a BMI of 40 or 41.  (AR 26.)  Further, the ALJ went on to say that in considering the effects of plaintiff's obesity on his other impairments, he found "no evidence of any specific or quantifiable impact."  (AR 26–27.)  Moreover, despite plaintiff's speculation that his obesity *could* exacerbate his impairments, he has failed to point to any medical opinion attributing further limitations to his obesity.  *See Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018) ("[P]ointing to various diagnoses and complaints and saying that they *might* hinder [him] is insufficient to establish the existence of a functional limitation.") (emphasis added).

  Nor does plaintiff cite any medical evidence showing that his obesity was more limiting than the ALJ found.  Finally, the ALJ had already arrived at a highly restrictive RFC anyway, sedentary work with a sit/stand option and the use of a cane, as well as numerous postural and environmental restrictions.  *See Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (no remand required where "record relied upon by the ALJ sufficiently analyzed her obesity" and claimant failed to "point to evidence suggesting that her obesity exacerbated his physical impairments"); *see also Shumaker v. Colvin*, 632 F. App'x 861, 867–68 (7th Cir. 2015) (no remand required where claimant "does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ, and neither does she explain how her obesity exacerbated her underlying impairments.")  Therefore, plaintiff has failed to identify any error in the ALJ's consideration of his obesity that would require remand for further consideration.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, is AFFIRMED, and plaintiff Douglas McNamara's appeal is DISMISSED. The clerk of court is directed to enter final judgment in favor of defendant.

Entered February 16, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge